**Francis BRYANT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 65277.**

Court of Criminal Appeals of Texas, En Banc.

June 22, 1983.

J. Michael Bradford, (on appeal only) Beaumont, for appellant.

James S. McGrath, Dist. Atty. and John B. Stevens, Jr., Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty. and Alfred

Walker, Asst. State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

In a jury trial appellant was found guilty of burglary of a building. The jury found an enhancement allegation true and assessed punishment at confinement for ten years.

Appellant contends that evidence obtained in an inventory search of his automobile was inadmissible because his arrest was illegal. The facts and circumstances surrounding the arrest and ensuing search and seizure appear in the record by way of a stipulation entered into by the State and appellant at the hearing on the motion to suppress. The stipulation reads in pertinent part as follows:

"That the Port Arthur, Texas, Police Department received through the mails papers from the State of New York, Division of Parole, indicating that Francis Bryant was wanted by the State of New York for *violation of parole.* . . .[1] After receipt of those papers, Officer W.E. Edmonds, Jr., of the Port Arthur, Texas, Police Department, on May 30, 1979, went before Judge John Knowles, Justice of the Peace for Jefferson County, Texas, Precinct Two, and swore out a complaint for the issuance of an arrest warrant for Francis Bryant. . . . *Based on that sworn complaint,* Judge Knowles issued a warrant for the arrest of Francis Bryant on May 30, 1979. Pursuant to that warrant, Officers Eddie Collins and W.E. Edmonds, Jr., arrested Francis Bryant in Port Arthur, Texas, on May 30, 1979. Subsequent to the arrest, the automobile which Francis Bryant was driving at the time of his arrest was impounded and taken to the Port Arthur, Texas, police station where it was searched."

Attached to the stipulation as exhibits are the documents from New York and the complaint or affidavit by Edmonds in support of the Texas warrant. The New York papers include a certified copy of a warrant issued by the New York State Board of Parole (entitled "Warrant for Retaking and Detaining a Paroled or Conditionally Released Prisoner") and a letter from a New York parole officer requesting Port Arthur police to detain appellant, pending extradition for violation of parole. The letter and identifying information state that appellant was on parole from a conviction and four year sentence for "robbery third degree." The New York warrant states that the parole board has "reasonable cause to believe" that appellant violated parole. The affidavit by Edmonds states, "I believe and have good reason to believe" that appellant is a fugitive from New York, where he is wanted for violation of parole. The Texas warrant does not appear in the record.[2]

Appellant contends the Texas warrant is invalid because the stipulation states that the warrant was issued "[b]ased on that sworn complaint" or supporting affidavit by Edmonds, and because the affidavit, *standing alone,* did not provide the magistrate "with sufficient information to support an independent judgment that probable cause exist[ed] for the warrant." *Whiteley v. Warden,* 401 U.S. 560, 564, 91 S.Ct. 1031, 1034, 28 L.Ed.2d 306 (1971). In *Whiteley,* so far as the record stipulated to by the parties revealed, the *sole support* for the warrant was an affidavit consisting of nothing more than the affiant officer's conclusion that the named individuals perpetrated the offense therein described. In the present case, at the hearing on the motion to suppress, the trial court had before it not

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. Unlike *Gant v. State,* 649 S.W.2d 30 (Tex.Cr. App., 1983) appellant stipulated to the existence of the Texas arrest warrant. The focus of his attack before trial and on appeal is the sufficiency of the affidavit by Edmonds, which was exhibited to the trial judge and which appears in the record for our review. See *Cannady v. State,* 582 S.W.2d 467 (Tex.Cr.App. 1979).

only the complaint by Edmonds but the letter and warrant from the New York authorities. At that hearing counsel for appellant stated the following, and counsel for the State agreed:

> "Basically we have a situation where an arrest warrant was issued based upon some papers that came down from the State of New York alleging that Mr. Bryant was wanted in another state as a fugitive and a fugitive warrant was issued."

By questioning counsel for appellant and the State, the trial court developed for the record what amounted to an amendment to the stipulation: the fact that when Judge Knowles issued the Texas warrant he had before him all the documents mentioned in the stipulation, including the letter and warrant from New York, *not merely the conclusory complaint by Edmonds.*

At the hearing, counsel for appellant stated that he was "not attacking the finding of probable cause in the other state," [3] and his argument finally rested on federal constitutional grounds:

> "The only question is whether or not the [Texas] arrest warrant issued in this

case was done properly under the constitutional requirements.

I don't dispute it met the state law requirements. It met those just fine." [4]

Therefore, the question we address is whether the trial court was correct in ruling appellant's arrest, pursuant to a Texas warrant based on the affidavit and the warrant and letter from New York authorities, violated the reasonableness requirement of the Fourth Amendment as applied to the states by the Fourteenth.[5]

■ Appellant was arrested at the request of out of state authorities for violation of parole.

> "We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Cf. *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). Parole arises after the end of the criminal prosecution, including imposition of sentence. Supervision is not directly by the court but by an administrative agency, which is sometimes an arm of the court and sometimes of the executive.

---

3. This is not a case involving an attack on the validity of a governor's extradition warrant. See *Michigan v. Duran,* 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978) and *Ex parte Moore,* 579 S.W.2d 475 (Tex.Cr.App.1979).

4. The State pointed the trial court to the statutory provisions below.
   Article 51.03, V.A.C.C.P.:
   "When a complaint is made to a magistrate that any person within his jurisdiction is a fugitive from justice from another State, he shall issue a warrant of arrest directing a peace officer to apprehend and bring the accused before him."
   Article 51.04, supra:
   "The complaint shall be sufficient if it recites:
   1. The name of the person accused;
   2. The State from which he has fled;
   3. The offense committed by the accused;
   4. That he has fled to this State from the State where the offense was committed; and
   5. That the act alleged to have been committed by the accused is a violation of the penal law of the State from which he fled."
   Article 51.13, § 13, supra:

> "Whenever any person within this State shall be charged on the oath of any credible person before any judge or magistrate of this State with the commission of any crime in any other State and ... with having fled from justice, or with having been convicted of a crime in that State and having escaped from confinement, or having broken the terms of his bail, probation or parole, ... the judge or magistrate shall issue a warrant directed to any peace officer commanding him to apprehend the person named therein, wherever he may be found in this State, and to bring him before the same or any other judge, magistrate or court who or which may be available in or convenient of access to the place where the arrest may be made, to answer the charge or complaint and affidavit, and a certified copy of the sworn charge or complaint and affidavit upon which the warrant is issued shall be attached to the warrant."

5. Because we have before us not only the affidavit but the New York documents, as did the trial court, our inquiry is not bound by the four corners of the affidavit. Compare *Evans v. State,* 530 S.W.2d 932 (Tex.Cr.App.1975).

Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."

*Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972). Nevertheless, the "conditional" or "indeterminate" liberty of a parolee "is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal." *Id.,* at 482, 92 S.Ct. at 2600. See also *Hyser v. Reed,* 318 F.2d 225 (D.C. Cir.1963).

*Morrissey* dealt with the minimal due process to be accorded an alleged parole violator *after arrest.* Half a century ago in another context the Supreme Court observed the following regarding a federal parole violator:

"[The parolee's] violation of the parole, evidenced by the warden's warrant and his conviction, sentence to and confinement in the Joliet penitentiary . . . was in legal effect on the same plane as an escape from the custody and control of the warden. His status and rights were analogous to those of an escaped convict."

*Anderson v. Corall,* 263 U.S. 193, 197, 44 S.Ct. 43, 45, 68 L.Ed. 247 (1923). This Court finds persuasive the reasoning employed

and authorities assembled on a similar question by the Court of Appeals for the Second Circuit:

"We do not suggest that the mere allegation of a parole violation justifies treating a parolee like an escaped convict. However, that allegation and the resulting issuance of a warrant for retaking do operate to remove a parolee one step farther from the constitutional protection enjoyed by ordinary citizens."

*United States v. Polito,* 583 F.2d 48, 55 (2nd Cir.1978) (Federal parole violator arrested by state officers). As counsel for the State in this case cogently argued before the trial court, a distinction should be drawn between "the rights of a citizen who is merely . . . accused of a crime and the rights of a criminal who is under the force of the penal system." [6]

■ We find no violation of appellant's Fourth Amendment right against unreasonable search and seizure in his arrest as a parole violator, pursuant to the Texas warrant supported by the affidavit from the Port Arthur officer and the documents from the New York authorities.[7]

In the second ground of error appellant complains of the refusal of the court to grant a mistrial when the prosecutor asked appellant on crossexamination the following

**6.** Thus, on both state and federal grounds this case is distinguishable from *Ex parte Dalton,* 154 Tex.Cr.R. 258, 226 S.W.2d 871 (1950), in which a Texas warrant, based on a complaint to the magistrate and a warrant from another state calling for relator's arrest and return on a felony charge of failure to pay child support, was held invalid. *Dalton* dealt with a person merely accused of a crime, not one already convicted and on parole.

**7.** In a supplemental brief appellant concedes the State was correct in arguing to the trial court and on appeal that Texas law authorizes the warrantless arrest of fugitive felons from other states under certain circumstances. Article 51.13, § 14, V.A.C.C.P. provides:

"The arrest of a person may be lawfully made also by any peace officer or private person, without a warrant upon reasonable information that the accused stands charged in the courts of a State with a crime punishable by death or imprisonment for a term

exceeding one year, but when so arrested the accused must be taken before a judge or magistrate with all practicable speed and complaint must be made against him under oath setting forth the ground for the arrest as in the preceding section; and thereafter his answer shall be heard as if he had been arrested on a warrant."

He contends that the statute "is unconstitutional if it means that a suspected fugitive may be in every case arrested without a warrant." Appellant argues that *Morales v. State,* 513 S.W.2d 869 (Tex.Cr.App.1974), cited by the State for interpretation of Article 51.13, § 14, supra, erroneously relied upon two Supreme Court cases decided before the Fourth Amendment was held applicable to the states through the Fourteenth. See *Stallings v. Splain,* 253 U.S. 339, 40 S.Ct. 537, 64 L.Ed. 940 (1919) and *Burton v. New York C & H Railway Co.,* 245 U.S. 315, 38 S.Ct. 108, 62 L.Ed. 314 (1917). However, because of the disposition above we need not address this ground any further.

question, which appellant contends alluded improperly to an extraneous offense:

"Okay. You weren't arrested for this burglary, were you?"

The question was not answered; appellant's objection was sustained, and the court instructed the jury to disregard the question.

■ This Court usually will not reverse a conviction merely because an improper question was asked; the question must be obviously harmful. *McCarter v. State,* 527 S.W.2d 296 (Tex.Cr.App.1975). The question in the present case was not obviously harmful, and the instruction by the trial court to disregard the question cured any error.

■ No bad faith is shown on the part of the prosecutor in asking the question. In a pretrial hearing on appellant's motion in limine the court had ruled that the State would be permitted to elicit at trial the fact that appellant was arrested pursuant to a warrant but not for which offense. The prosecutor's question, though skirting the prohibited area, was still within the boundaries laid down by the court. No attempt to circumvent the court's ruling is shown. Compare *Dexter v. State,* 544 S.W.2d 426 (Tex.Cr.App.1976). Appellant's second ground of error is overruled.

The judgment of conviction is affirmed.